UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| JOE GARCIA, | ) | No. CV 12-8209-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) | |

## I.
## PROCEEDINGS

Plaintiff filed this action on October 3, 2012, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on October 29, 2012, and November 7, 2012. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 28, 2013, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on July 12, 1972. [Administrative Record ("AR") at 38.] He has a high school education [AR at 136] and past relevant work experience as a truck driver. [AR at 137, 153-64.]

Plaintiff filed his application for Disability Insurance Benefits on June 1, 2010, and protectively filed his application for Supplemental Security Income payments on June 7, 2010, alleging that he has been disabled since November 12, 2007, due to depression and problems with his right knee, right leg, and left foot, among other things. [AR at 38-39, 104-18, 135-43, 173-77, 181-85.] After his applications were denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 42-54, 57.] A hearing was held on August 22, 2011, at which time plaintiff appeared with counsel and testified on his own behalf. A vocational expert also testified. [AR at 26-37.] On September 16, 2011, the ALJ determined that plaintiff was not disabled. [AR at 14-21.] On July 27, 2012, the Appeals Council denied plaintiff's request for review. [AR at 1-3, 10.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.  THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform

past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since his alleged disability onset date, November 12, 2007. [AR at 16.] At step two, the ALJ concluded that plaintiff has the severe impairment of patella-femoral arthrosis. [Id.] At step three, the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or equals any of the impairments in the Listing. [AR at 17.] The ALJ further found that plaintiff retains the residual functional capacity ("RFC")[1] to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a),[2] and specifically to: "lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and walk for two hours in an eight hour workday; sit up to six hours in an eight hour workday; and perform occasional posturals, except no crouching, crawling or squatting, and no ladders, ropes, or scaffolds." [Id.] At step four, the ALJ concluded that plaintiff is unable to perform any past relevant work. [AR at 20.] At step five, the ALJ found, relying on the Medical-Vocational Guidelines, that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. [AR at 21.] Accordingly, the ALJ found that plaintiff was not under a disability from November 12, 2007, through September 16, 2011, the date of the decision. [Id.]

---

[1]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]    "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1567(a), 416.967(a).

4

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ improperly: (1) failed to consider the existence of any closed periods of disability; (2) failed to consider the opinion of an examining physician; (3) rejected the opinion of plaintiff's treating physician; and (4) discounted plaintiff's subjective symptom testimony. [Joint Stipulation ("JS") at 4-5.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

### A.  SUMMARY OF PLAINTIFF'S RELEVANT MEDICAL HISTORY

On November 12, 2007, plaintiff was in a car accident and sustained a fracture to his right patella. [AR at 263.] On November 16, 2007, plaintiff underwent "right knee open repair fracture of the patella." [AR at 345.] Thereafter, on October 23, 2008, plaintiff underwent a second surgery on his right knee -- "[a]rthroscopy ... with closed manipulation of the right knee." [AR at 214, 253.] Almost one year later, on September 23, 2009, plaintiff's right knee gave out while he was walking, "causing him to twist his left foot and right knee" as he fell. [AR at 344.] On November 5, 2010, plaintiff underwent surgery on his right knee for the third time, which included the following procedures: "[a]rthroscopic partial right lateral meniscectomy"; "[a]rthroscopic lateral retinacular release"; "[o]pen excision of scar tissue formation, patellar tendon"; "[m]edial retinacular release"; and "[c]omplete synovectomy, medial compartment, lateral compartment, and anterior intercondylar notch regions." [AR at 405-07.]

### B.  PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may only reject the

claimant's testimony about the severity of his symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so. See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504 F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

On September 9, 2010, plaintiff completed a form entitled "Exertion Questionnaire Since Your Disability Began." [AR at 165-67.] In the questionnaire, plaintiff stated that he lives in a house that has two steps in front of the house and three steps at the side of the house. [AR at 165-66.] He stated that the steps affect him "by putting pressure to get up the stairs." [AR at 166.] Plaintiff reported that he uses a brace and a cane for support, but that after walking for 15 minutes, he is "in pain" and it seems to him like he has been walking "for hours." [AR at 165, 167.] Plaintiff also reported that he can lift five pounds two to three times a week, and can carry only "light grocer[ies] like egg[s], beans [and] bread." Plaintiff stated that he can sweep, mop, and wash dishes, but that these chores take him about an hour to complete because he must take breaks. [AR at 166.] He also reported more generally that housework takes him one to two hours to finish because he "can[']t stand on [his] feet so long," otherwise he "get[s] pain [in his] knee and legs." [AR at 167.] Plaintiff stated that he washes his car once every two weeks, and that he can rake leaves if he takes breaks every 15 minutes. He also stated that he can shop for groceries, "but ... take[s] [his] son with [him]," and that he drives, but sometimes has to stop because he "get[s] really bad pains." [AR at 166.]

At his August 22, 2011, administrative hearing, plaintiff testified that he stopped working because of the car accident in 2007. Plaintiff further testified that when his right knee gave out in September of 2009 and he twisted his left foot as a result, he "thought [he] just sprained it, but actually it was fractured." [AR at 31.] He testified that prior to his third knee surgery in November of 2010, he had stiffness in his right knee, he could only stand for 5 minutes before needing to sit down, and his knee would be "asleep" if he sat for 30 minutes. [AR at 28-29.] Plaintiff acknowledged that, following his third surgery, he had "improvement" with his knee in that he does not "feel as much ... stiffness," "can walk [a] little bit better," and "can sort of ... bend it a little bit more ... than ... before." [Id.] Plaintiff testified that the conditions that prevent him from working are his right knee problems, albeit less than before his third surgery, and his left foot injury. [AR at 30.] He also testified that his left foot had "gotten worse" since he first injured it in September of 2009, and that at the time of the hearing, he was waiting to schedule surgery on his foot. [AR at 30-31, 33.] Plaintiff stated that he lives with family members, who buy his groceries and who cook for him when he cannot. [AR at 32.] He also stated that he has difficulty showering, and keeps a chair in the shower so that he can sit down and take breaks. [AR at 32-33.] Plaintiff testified that he must take breaks when doing housework. [AR at 33.]

At step one of the two-step credibility analysis, the ALJ found that plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms." [AR at 19.] The ALJ nevertheless concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC findings for plaintiff]." [AR at 19-20.] Thus, at step two, as the record contains no evidence of malingering by plaintiff,[3] the ALJ was required to offer "specific, clear and convincing reasons" for rejecting his subjective symptom testimony. See Lingenfelter, 504 F.3d at 1036. "General findings are insufficient; rather, the ALJ must identify what testimony

---

[3] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834); see also Dodrill, 12 F.3d at 918.

The ALJ gave the following reasons for discrediting plaintiff's subjective symptom testimony: (1) plaintiff "testified that he has had improvement with less pain, stiffness, numbness and tingling since his November 2010 right knee surgery"; (2) his daily activities; and (3) the objective medical evidence. [AR at 18, 20.]

The ALJ's first reason for discounting plaintiff's statements about the severity of his subjective symptoms was that plaintiff "testified that he has had improvement with less pain, stiffness, numbness and tingling since his November 2010 right knee surgery." [AR at 18.] The ALJ also stated later in his decision that plaintiff "testified that surgery has allowed for significant improvement." [AR at 20.] The latter statement by the ALJ is a mischaracterization of plaintiff's testimony, however. When the ALJ asked plaintiff at the hearing whether plaintiff experienced any improvement with his right knee after his third surgery, plaintiff stated, "Yes, I did," and explained that he does not "feel as much ... stiffness," "can walk [a] little bit better," and "can sort of ... bend it a little bit more ... than ... before." [AR at 29.] Plaintiff did not testify that his third surgery resulted in "significant improvement" with his right knee, and the Court finds that such a characterization does not accurately summarize plaintiff's statements that his surgery resulted in less stiffness, the ability to "walk [a] little better," and the ability to "bend it a little bit more" than before. While plaintiff did testify to some improvement, the fact that a person "makes some improvement does not mean that [his] impairments no longer seriously affect his ability to function in a workplace." Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001). The ALJ's mischaracterization of plaintiff's testimony was improper (see Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her conclusion)), and the ALJ did not specify how some improvement with plaintiff's right knee following his third knee surgery is inconsistent with the rest of plaintiff's allegations concerning his limitations, including his testimony about his limitations prior to that surgery. As such, the ALJ's first reason for discounting plaintiff's credibility is not clear and convincing. See Lingenfelter, 504 F.3d at 1036.

8

Second, after noting that plaintiff testified his pain, stiffness, numbness, and tingling lessened after his third surgery, the ALJ stated: "Despite these allegations, [plaintiff] is able to shop for groceries, sweep, mop, wash dishes, wash his car, and rake leaves with appropriate breaks." [AR at 18.] As best as the Court can discern, it appears that the ALJ found plaintiff's representation -- that he had significant pain, stiffness, numbness, and tingling prior to his November 2010 surgery -- incredible because plaintiff stated in his September 9, 2010, exertion questionnaire that he can perform the above activities of daily living. The ALJ's summary of plaintiff's statements in that questionnaire also mischaracterizes the evidence, however. While plaintiff stated that he can shop for groceries, he also stated that he takes his son with him, that he is in pain after he walks for 15 minutes, and that he can only carry "light grocer[ies]" such as eggs, beans, and bread. Similarly, plaintiff reported that he must take breaks every 15 minutes when he rakes leaves, and that chores such as sweeping, mopping, and washing dishes take him approximately one hour to complete because he needs to take breaks. Finally, plaintiff stated that he washes his car once every two weeks, but also stated that housework generally takes him one to two hours to complete because he "can[']t stand on [his] feet so long," otherwise he "get[s] pain [in his] knee and legs." In light of plaintiff's statements as a whole, the Court does not find that his asserted daily activities constitute a clear and convincing reason to discount his allegations about the severity of his symptoms. Further, engaging in some household chores or activities is not necessarily inconsistent with a finding of disability. See Gallant, 753 F.2d at 1453 (benefits awarded on appeal to a claimant experiencing constant leg and back pain, despite the claimant's ability to cook and wash dishes); see also Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (stating that the ability to assist with some household tasks was not determinative of disability) (citing Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981) (disability claimant need not "vegetate in a dark room excluded from all forms of human and social activity")). The ALJ did not explain how plaintiff's ability to complete individual chores over the course of one to two hours (with breaks), and ability to shop for groceries with assistance and lift certain light items, supports the ALJ's finding that plaintiff could sustain gainful employment, because the ability to do these limited activities does not necessarily translate into an ability to do activities that are "transferable to a

work setting." See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (noting that a claimant is not required to be "utterly incapacitated" in order to be disabled and that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

Lastly, the ALJ discounted plaintiff's credibility because he found that "the objective findings in this case fail to provide strong support for [plaintiff's] allegations of disabling symptoms and limitations." [AR at 18.] While an ALJ may consider whether a lack of objective medical evidence supports the degree of limitation, this "cannot form the sole basis for discounting pain testimony." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). "The rationale for this restriction is that pain testimony may establish greater limitations than can medical evidence alone." Id. at 680 (citing Social Security Ruling[4] 96-7p). Thus, even assuming the ALJ's characterization of the medical evidence is supported by substantial evidence, the ALJ may rely upon this rationale only if one or more of his other reasons for discounting plaintiff's credibility is proper. As discussed supra, neither of his other reasons is proper.

The ALJ failed to offer any legally adequate reason for discounting plaintiff's credibility. Remand is warranted on this issue.

**C.    TREATING PHYSICIAN OPINION**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed

---

[4] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

Where a treating physician's opinion does not contradict other medical evidence, the ALJ must provide clear and convincing reasons to discount it. Lester, 81 F.3d at 830. This includes opinions on the ultimate issue of whether a claimant is disabled. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.") (internal citation and quotations omitted). Where a treating physician's opinion conflicts with other medical evidence, the ALJ must set forth specific and legitimate reasons supported by substantial evidence in the record to reject it. Lester, 81 F.3d at 830; see also McAllister v. Sullivan, 888 F.2d 599, 602-03 (9th Cir. 1989). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons supported by substantial evidence in the record to reject the contradicted opinion of an examining physician. See id. at 830-31. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating] doctors', are correct." Id.

On October 7, 2009, Dr. Philip A. Sobol performed an initial orthopedic evaluation of plaintiff, which included a physical examination, a neurological examination, and taking x-rays of plaintiff's right knee and left foot. [AR at 342-54.] Based on his findings, Dr. Sobol diagnosed plaintiff with "[s]tatus post open reduction/internal fixation, right patella fracture, with resultant calcification, patellar tendon, with residual internal derangement and possible nerve stretch and hamstring strain, secondary to recent fall," as well as "[l]eft displaced fifth metatarsal fracture, secondary to [the first diagnosis]." [AR at 352.] Dr. Sobol fitted plaintiff with a short moon boot,

11

1 advised plaintiff to continue using his knee brace and crutches, prescribed pain medications, requested authorization for an MRI of his right knee, referred him to a surgeon for a surgical consultation concerning his right foot, and opined that plaintiff would be temporarily totally disabled for eight weeks. [AR at 352-54.] An MRI of plaintiff's right knee was taken on November 10, 2009 [AR at 341], and on November 20, 2009, Dr. Sobol saw plaintiff again and viewed his MRI. Dr. Sobol rendered the same diagnoses, refilled plaintiff's prescriptions, referred him for physical therapy, and opined that he would be temporarily totally disabled for another six weeks. [AR at 330-31.] Between January 2010 and October 2010, Dr. Sobol saw plaintiff once every six weeks, continued to opine that he was temporarily totally disabled, and referred him for his third knee surgery. [AR at 332-40, 383-85.] Following plaintiff's third knee surgery on November 5, 2010, and up until May 11, 2011, Dr. Sobol continued to see plaintiff once every six to seven weeks, recommend treatment for his right knee and left foot, prescribe medications to him, and opine that he was temporarily totally disabled. [AR 442-47, 451-52.] On June 6, 2011, Dr. Sobol completed a "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)" form concerning plaintiff. In the form, Dr. Sobol opined that plaintiff can lift and carry less than 10 pounds occasionally and frequently; stand and walk less than 2 hours in an 8-hour workday, but would need to change positions every 5 to 10 minutes; sit approximately two hours in an 8-hour workday, but would need to change positions every 15 to 20 minutes; occasionally twist; and never stoop/bend, crouch, or climb stairs and ladders. He also opined that plaintiff would "need the opportunity to shift at will from sitting or standing/walking"; that he frequently would need to lie down at unpredictable intervals during the day; and that he remained temporarily totally disabled pending further evaluation and treatment. Dr. Sobol stated that his opinions were based on plaintiff's examinations, x-rays, history, and surgeries. [AR at 485-87 (emphasis omitted).]

In his decision, the ALJ noted that Dr. Sobol's opinions "contain issues reserved to the Commissioner[,] ... such as whether an individual is disabled under the [Social Security] Act." However, the ALJ then assigned "partial weight ... to Dr. Sobol's opinion of [plaintiff's] inability to crouch and climb," without explicitly rejecting or assigning any weight to the remainder of Dr. Sobol's opinion. [AR at 19.]

Dr. Sobol's opinion on the ultimate issue of whether plaintiff was disabled during part of the alleged disability period conflicted with that of examining physician Warren David Yu, who opined on August 28, 2010, that plaintiff could perform modified sedentary work. [See AR at 369-72.] Thus, while the ALJ correctly stated that the determination of a claimant's ultimate disability is reserved to the Commissioner (see 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1)), the ALJ was still required to give specific and legitimate reasons to reject Dr. Sobol's opinion that plaintiff has been disabled from October of 2009 until as late as June of 2011. See McAllister, 888 F.2d at 602-03 (remand warranted where ALJ failed to give adequately specific and legitimate reasons for disregarding treating physician's testimony that the claimant was "fully disabled for employment" due to personality disorder). However, the ALJ failed to give any other reason to reject Dr. Sobol's opinion, and thus he did not satisfy the requisite standard to reject the opinion of a treating physician.

Further, Dr. Sobol's opinion that plaintiff can only sit for about 2 hours out of an 8-hour workday; can never stoop, bend, or climb; would need the opportunity to shift at will from sitting or standing/walking; and would frequently need to lie down at unpredictable intervals, conflicts with Dr. Yu's opinion that plaintiff can sit for up to 6 hours in an 8-hour workday (without additional restrictions on sitting), and can perform occasional stooping, bending, and climbing. Thus, to the extent the ALJ did not adopt Dr. Sobol's opinion, he was required to give specific and legitimate reasons to reject that portion of the doctor's opinion. Here, the ALJ adopted Dr. Sobol's opinion that plaintiff cannot crouch or climb, but did not mention the rest of his opinion concerning plaintiff's limitations. [AR at 19.] The ALJ's decision does not explain why he implicitly rejected the bulk of Dr. Sobol's opinion concerning plaintiff's limitations, but adopted the doctor's opinion that plaintiff cannot crouch or climb. [See id.] Indeed, all of Dr. Sobol's opinions concerning plaintiff's limitations and whether he is able to work shared the same foundation, i.e., his one-and-one-half-year history of treating plaintiff.[5] Accordingly, the ALJ's rejection, without explanation, of the bulk

---

[5] The opinions of treating physicians are generally given more weight than the opinions of other physicians because treating physicians "are likely to be the medical professionals most able
(continued...)

13

of Dr. Sobol's opinion -- especially in light of his adoption of part of Dr. Sobol's opinion -- is not supported by substantial evidence.

The ALJ failed to give any specific and legitimate reasons to reject Dr. Sobol's opinion.[6] [7]

---

[5](...continued)
to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see id. at §§ 404.1527(c)(2)(i), (ii), 416.927(c)(2)(i), (ii) (weight accorded to a treating physician's opinion dependent on length of the treatment relationship, frequency of visits, and nature and extent of treatment received). Based on the length of the treatment relationship and Dr. Sobol's experience with plaintiff, Dr. Sobol had the broadest range of knowledge regarding plaintiff's physical condition, which is supported by the treatment records. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Lester, 81 F.3d at 833 ("The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment.").

[6] In his first contention of error, plaintiff asserts that the ALJ failed to consider in his decision "whether [p]laintiff had been disabled for any 12-month period during the relevant period," i.e., whether the evidence supported a closed period of disability. [JS at 5-6.] Under the regulations, a person is disabled if he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. §§ 404.1505(a), 416.905(a). "The ALJ is required to consider a closed period of disability if evidence in the record supports a finding that a person is disabled for a period of not less than twelve months." Rosales v. Colvin, 2013 WL 1410387, at *4 (D. Ariz. Apr. 8, 2013) (citing Reynoso v. Astrue, 2011 WL 2554210, at *3 (C.D. Cal. June 27, 2011); Johnson v. Astrue, 2008 WL 5103230, at *4 (C.D. Cal. Dec. 2, 2008)). In light of the ALJ's offer at plaintiff's hearing to find "a closed period [of disability]" ending on January 1, 2011 [AR at 29], the ALJ on remand (after reconsidering plaintiff's credibility and Dr. Sobol's opinion) should specifically evaluate whether the evidence supports a closed period of disability. Relevant to this issue, the Court notes that it appears the ALJ credited treating physician Lancy Allyn's opinion that plaintiff could return to his "usual and customary employment" as of March 2009 [AR at 19, 198], but did not discuss or reject Dr. Allyn's earlier opinions that plaintiff could perform either no work or only desk work between December 10, 2007, and December 23, 2008. [See AR at 200-04, 208, 212-39, 245-52, 261-65.]

[7] In his second contention of error, plaintiff contends that the ALJ failed to consider the opinion of examining physician Ernest Washington, and that this error was not harmless. [JS at 7-13.] The administrative record does not contain Dr. Washington's April 1, 2009, agreed medical evaluation report, but portions of that report are summarized in Dr. Sobol's October 7, 2009, initial orthopedic evaluation. [See AR at 347-48.] On remand, to the extent plaintiff asserts that the ALJ should consider Dr. Washington's opinion, plaintiff should obtain a copy of Dr. Washington's April
(continued...)

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to properly evaluate plaintiff's credibility and Dr. Sobol's opinion, and consider whether the evidence supports a closed period of disability. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: June 28, 2013

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[7](...continued)
1, 2009, report and submit it to the Commissioner.